1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

LEONAR V. MENDELL,

                                              Plaintiff,

                v.

JOANNE B. BARNHART,
Commissioner of Social Security
Administration,

                                              Defendant.

CASE NO. 05cv0702 J (JMA)

**ORDER:**

**(1) ADOPTING R&R,**

**(2) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**(3) DENYING PLAINTIFF'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, REMAND**

Before the Court is Plaintiff Leonar Mendell's ("Plaintiff") Motion for Reversal and/or Remand and Defendant Commissioner of Social Security Jo Anne B. Barnhart's ("Defendant") Cross-Motion for Summary Judgment. [Doc. Nos. 10, 12.] Magistrate Judge Jan M. Adler has filed a Report and Recommendation ("R&R"), recommending denial of Plaintiff's Motion for Reversal and/or Remand and granting of Defendant's Cross-Motion for Summary Judgment. [Doc. No. 16.] Plaintiff filed an Objection to the R&R; Defendant filed a Response to Plaintiff's Objection. [Doc. Nos. 17, 19.] The issues presented are decided without oral argument. *See* S.D. Cal. Civ. R. 7.1.d.1 (2006). For the reasons set forth below, the Court **ADOPTS** the R&R, **GRANTS** Defendant's Cross-Motion for Summary Judgment,

1  and **DENIES** Plaintiff's Motion for Reversal and/or Remand.

2

3  ### *Background*

4      Plaintiff, who is 44 years old, resides with her husband, mother, and adult son. (*See*

5  Admin. R. at 60.)  She attended high school until the tenth grade, taking special education

6  classes for reading and spelling. (*See id.* at 72, 154, 166.)  In tenth grade, she had a GPA of

7  1.39. (*See id.* at 129.)  Plaintiff previously worked in Tijuana moving and transporting

8  furniture with her father, but stopped when her father passed away seven or ten years ago.[1]

9  (*See id.* at 155, 166-67.)  Plaintiff's husband currently supports her. (*See id.* at 167.)

10     On or around July 23, 2002[2], Plaintiff filed an application for supplemental security

11 income ("SSI") benefits, alleging a disability onset date of December 1, 2001. (*See id.* at 14,

12 60-63.)  Plaintiff indicated that her hands would "lock" while performing household chores,

13 and that the "locking" caused her pain. (*See id.* at 66, 73, 86.)  The Social Security

14 Administration ("SSA") denied Plaintiff's application on October 18, 2002, and then denied

15 the application again upon reconsideration. (*See id.* at 22-25.)  On February 3, 2003, Plaintiff

16 filed a request for an administrative hearing, adding that she now had pain in her knees and

17 felt depressed. (*See id.* at 31, 90.)

18     On April 30, 2004, the Administrative Law Judge ("ALJ") James S. Carletti conducted

19 a hearing on Plaintiff's application. (*See id.* at 14, 165.)   Attorney Anthony Delellis

20 represented Plaintiff at the hearing. (*See id.* at 166.)   Plaintiff testified that she had

21 experienced pain in her hands for the past four to five years, which resulted in difficulty doing

22 housework. (*See id.* at 167-68.)  She also claimed that she had knee pain which prevented her

23 from being able to walk very far. (*See id.* at 177-78.)  She testified that her pain medications

24 included Codeine 3, Ibuprofen 800, Covera, Diclofenac, and Flexeril. (*See id.* at 169.)

25

26     [1] There are inconsistent reports as to the date Plaintiff's father passed away. (*Compare* Admin.
   R. at 155 *with* Admin. R. at 166-67.)

27

28     [2] Although the ALJ noted Plaintiff filed the application on July 23, 2002, Plaintiff dated her
   application July 30, 2002, and the Social Security office marked the application received on August
   1, 2002. (*See* Admin. R. at 14, 60, 63.)

With respect to her depression, Plaintiff testified that she cries for no reason and felt depressed three times a week for about two years. (*See id.* at 180-81.) Plaintiff has never been referred to County Mental Health. (*See id.* at 171.) Also, none of Plaintiff's treating physicians saw the need to refer her to psychiatric care. (*See id.* at 136, 157.) However, Plaintiff testified at the hearing that "one time" she was given a telephone number for a psychiatrist, but could not afford to see a doctor. (*See id.*) Plaintiff testified that instead she attends marriage and family therapy. (*See id.* at 170.)

### A. Plaintiff's Physical Impairments

On September 29, 2002, Plaintiff underwent an orthopedic evaluation with Dr. Rajeswari Kumar of the Seagate Medical Group at the request of the Department of Social Services. (*See id.* at 93.) Dr. Kumar, who considered Plaintiff to be a "fairly reliable historian" of her symptoms, found upon examination that Plaintiff's wrists and hands did not reveal any deformities or joint tenderness. (*See id.* at 93, 96.)

On November 6, 2002, Plaintiff saw Dr. Ildiko Gerbatsch-Bornemisza ("Dr. Gerbatsch") at the San Ysidro Health Center. (*See id.* at 109.) Plaintiff described to the doctor a two year history of pain and numbness in both hands, as well as difficulty in holding and lifting heavy objects. (*See id.*) Dr. Gerbatsch prescribed the anti-inflammatory drugs Vioxx, Covera-HS, and Bextra, the anti-depressant Zoloft, and ordered an x-ray of her left knee. (*See id.*) Plaintiff's x-ray came back normal. (*See id.*)

On November 13, 2003, Plaintiff returned to the San Ysidro Health Clinic because she had fallen and injured her right foot. (*See id.* at 115.) An x-ray of Plaintiff's right foot revealed a fracture. (*See id.* at 116.) On December 9, 2003, Plaintiff saw Dr. Williams C. Eves, an orthopedist, for treatment on her injured right foot. (*See id.* at 148.) Dr. Eves prescribed a walker boot; and during Plaintiff's follow-up visit, he referred Plaintiff to physical therapy. (*See id.* at 147, 149.) Dr. Eves also noted that Plaintiff complained of pain and numbness in her hands. (*See id.* at 147.)

On February 2, 2004, Plaintiff returned to Dr. Eves. (*See id.* at 147.) She exhibited a reasonable range of motion in her ankle and did not have any significant tenderness. (*See*

1  *id.*) Dr. Eves opined that Plaintiff may have had bilateral carpal tunnel syndrome, and also

2  ordered nerve conduction studies. (*See id.* at 144-45, 147.)   The findings of the nerve

3  conduction studies were normal, but showed possible bilateral carpal tunnel syndrome. (*See*

4  *id.* at 146.)  Dr. Eves instructed Plaintiff to return in a few weeks at which point he would

5  review the results of the nerve studies, but the record shows no additional visits with Dr. Eves.

6  (*See id.*)

7      On April 27, 2004, Dr. Ellen G. Rodarte of San Ysidro Health Center completed a

8  questionnaire at the request of Plaintiff's attorney. (*See id.* at 135-40.)  Dr. Rodarte examined

9  Plaintiff twice, and concluded that Plaintiff's ankle fracture would not last more than twelve

10 months. (*See id.* at 135-36.)  Dr. Rodarte indicated that Plaintiff "should be able to do work

11 sitting" but also admitted that she did not perform a full disability evaluation. (*See id.* at 136-

12 37, 140.)

13 ***B. Plaintiff's Mental Impairments***

14      On January 31, 2003, during another visit to San Ysidro Health Center, Plaintiff

15 reported she had increased her alcohol consumption due to recent deaths in her family. (*See*

16 *id.* at 122.)  Plaintiff was prescribed the anti-depressant drug Elavil. (*See id.*)

17      On April 12, 2004, Marriage and Family Therapist Trainee Moriyah Simone ("Ms.

18 Simone") submitted a letter to Plaintiff's attorney in which she stated:

19      To Whom It May Concern,

20      Leonar Mendell has been a regular client of mine at Y.M.C.A. Family Stress

21      Counseling Center since June 30, 2003.  She presented with chronic symptoms

22      of depression and anxiety.  The client has described chronic pain, sleeplessness

23      and compulsively picking at her skin, which has resulted in damage to the skin

24      with bruising.  Treatment is focused on lowering anxiety and exploring coping

25      skills.

26 (*Id.* at 132.)

27      On June 30, 2004, at the request of the SSA, Plaintiff underwent a complete psychiatric

28 evaluation by Dr. Kenneth Galen of Seagate Medical Group. (*See id.* at 152-58.)  Plaintiff told

1   Dr. Galen that she did not feel she could work because of her physical impairments. (*See id.*
2   at 155.)  Dr. Galen's diagnostic impression included depressive disorder and a generalized
3   anxiety disorder.[3] (*See id.* at 157.)  His prognosis was that Plaintiff's condition was expected
4   to improve within the next twelve months with active treatment. (*See id.*)   Based on his
5   evaluation, Dr. Galen noted no impairment in Plaintiff's ability to understand, remember, or
6   complete complex commands; however, she found mild impairment in Plaintiff's ability to
7   maintain concentration, and mild impairment in her ability to adapt to stressors in a work
8   environment. (*See id.* at 157-58.)  He found no impairment in her ability to associate with co-
9   workers, to perform daily work activities, and to maintain work attendance. (*See id.*)   Dr.
10  Galen also noted that Plaintiff "has anxiety which may interfere with her ability to concentrate
11  on a job." (*See id.* at 160.)

12  *C. Vocational Expert*

13      At the administrative hearing on April 30, 2004, vocational expert Mary Jesko ("VE")
14  testified. (*See id.* at 185.)  During her testimony, the ALJ posed a hypothetical to her, based
15  on Plaintiff's physical impairments but not her mental impairments, and asked if that
16  hypothetical person could perform gainful work in the national economy:

17          Assume we have a younger individual as defined in the regulations with
18          less than a high school education, prior work experience which you've
19          indicated would be light to heavy and unskilled to semi-skilled.  If the
20          limitations were those noted by the State Agency doctor in Exhibit 2F[4],
21          which would be lifting and carrying 10 to 20 pounds and standing and
22          walking and sitting six hours in any eight hour workday, no postural
23          limitations, no visual limitations.  There would be a need to avoid hazards,
24          machinery, heights and also extreme cold.  Avoid concentrated exposure.

25

26          [3] Dr. Galen also noted Plaintiff's report of a history of asthma, diabetes, anemia, carpal tunnel
27  syndrome, hypertension, osteoporosis, broken ankle, liver and kidney problems. (Admin. R. at 157.)
    He deferred Plaintiff's claims to the appropriate specialist. (*See id.*)

28          [4] Exhibit 2F consists of a "Physical Residual Functional Capacity Assessment" form completed
    by a state agency physician on October 17, 2002.  (*See* Admin. R. at 98-105.)

1      And maniputively [sic] no difficulty with the left hand . . . [a]nd with the

2      right hand can do no forceful gripping, that's no more than 20 pounds and

3      could only occasionally keyboard.  And I guess it's also saying occasional

4      fine manipulation with the right upper extremity.  Two out of four.  With

5      those limitations and [Plaintiff's] vocational profile, would any of her prior

6      work activity be available?  And if not, would there be other work activity

7      that exists either nationally or locally that could be performed?

8  (*See id.* 185-86.)  The VE responded that the hypothetical person could not perform her prior

9  work, but that she could perform the jobs of ink printer, production inspector, and carding

10  machine tender. (*See id.* at 186.)

11      Then Plaintiff's attorney posed a hypothetical based on Plaintiff's mental and physical

12  impairments. (*See id.* at 187-89.)  Plaintiff's attorney asked the VE to assume for the purposes

13  of his hypothetical that Plaintiff was limited to: frequent lifting of ten pounds; occasional

14  lifting of ten pounds; occasional gripping and grasping; no fine manipulation bilaterally;

15  standing and walking two hours out of an eight hour day; unlimited sitting and pushing;

16  pulling limited to ten pounds; no kneeling, climbing, crawling, or crouching; and limited to

17  simple repetitive tasks. (*See id.* at 187-89.)  The VE responded that a hypothetical person with

18  Plaintiff's vocational profile and with the limitations Plaintiff claimed she had would not be

19  able to perform any work in the national economy. (*See id.*)

20  ***D.  ALJ Decision and Subsequent Procedural History***

21      On September 15, 2004, the ALJ issued its decision. (*See id.* at 14.)  The ALJ found

22  Plaintiff's claims to be less than fully credible. (*See id.* at 16.)  Although the ALJ noted that

23  Plaintiff had a combination of severe physical impairments, the ALJ found that Plaintiff

24  "retains the residual functional capacity to perform substantial gainful activity existing in

25  significant numbers in the national economy." (*See id.* at 15.)  This is because the ALJ found,

26  *inter alia,* that no treating or examining physician has ever found Plaintiff to be totally

27  disabled, that her examining physician Dr. Rodarte did not expect her ankle fracture to last

28  more than twelve months, and that she had no muscle atrophy in either hand affected with

carpal tunnel syndrome. (*See id.* at 16.)  The ALJ also found no symptom of severe mental impairment.  (*See id.*)  The ALJ rested its decision on Dr. Galen's psychiatric evaluation of Plaintiff, which showed that she suffered a mild depressive disorder and an anxiety disorder, resulting in little or no limitations. (*See id.*)  Declining to find that Plaintiff suffered mental impairment, the ALJ noted that Plaintiff has not received any treatment from a psychiatrist, nor had her treating physicians felt the need to refer her to a psychiatrist.  (*See id.*)

As a result of his assessment of the record, the ALJ found Plaintiff to not be disabled because Plaintiff could still perform a significant range of light work. (*See id.* at 17-18.) Examples of such work cited by the VE include ink printer, product inspector, and carding machine operator. (*See id.* at 18.)   Based on these findings the ALJ denied Plaintiff's application for SSI benefits. (*See id.*)

On February 4, 2005, the ALJ's decision became Defendant's final decision when the SSA Appeals Council denied Plaintiff's request for review. (*See* Admin. R. at 3-5.)  On April 6, 2005, having exhausted all administrative remedies, Plaintiff filed this action with the U.S. District Court, challenging Defendant's adoption of the ALJ's decision. [Doc. No. 1.]  On August 11, 2005, Plaintiff filed a Motion for Reversal and/or Remand with this Court.  [Doc. No. 10.] On August 30, 2005, Defendant filed a Cross-Motion for Summary Judgment. [Doc. No. 12.]  On September 15, 2005, Plaintiff filed an Opposition to Defendant's Motion for Summary Judgment ("Opposition"). [Doc. No. 14.]

On May 15, 2006, the Magistrate Judge issued an R&R recommending that this Court deny Plaintiff's Motion and grant Defendant's Cross-Motion. [Doc. No. 16.]  On June 5, 2006, Plaintiff filed timely Objections ("Objections") to the R&R; and on June 12, 2006, Defendant filed a timely Response to the Plaintiff's Objections ("Reply"). [Doc Nos. 17, 19.]

### *Legal Standard*

The district court's duties in connection with a magistrate judge's R&R are set forth in Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1).  *See* Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1) (2005).  The district court must make a de novo decision with

1    regard to any part of the R&R to which a party objects.  *See United States v. Raddatz,* 447

2    U.S. 667, 675 (1980).  The district court judge may "accept, reject or modify, in whole or part,

3    the findings or recommendations made by the magistrate."  28 U.S.C. § 636(b)(1).

4    When no objections are filed, the Court may assume the correctness of the Magistrate Judge's

5    findings of fact and decide the motion on the applicable law.  *See Campbell v. United States*

6    *Dist. Court,* 501 F.2d 196, 206 (9th Cir. 1974).  Under such circumstances, the Ninth Circuit

7    has held that "a failure to file objections only relieves the trial court of its burden to give *de*

8    *novo* review to factual findings; conclusions of law must still be reviewed *de novo.*"  *Barilla*

9    *v. Ervin*, 886 F.2d 1514, 1518 (9th Cir. 1989) (citation omitted) *overruled on other grounds*

10   *by Simpson v. Lear Astronics Corp.,* 77 F.3d 1170, 1174 (9th Cir. 1996).

11          Sections 405(g) and 1383(c)(3) of the Social Security Act allows unsuccessful

12   applicants to seek judicial review of the Commissioner's final determination.  *See* 42 U.S.C.

13   §§ 405(g), 1383(c)(3) (2006).  A reviewing court may set aside a decision denying benefits

14   "only if it is not supported by substantial evidence or if it is based on legal error."  *Jamerson*

15   *v. Chater,* 112 F.3d 1064, 1066 (9th Cir. 1997).  According to the Court of Appeals for the

16   Ninth Circuit, substantial evidence is " 'relevant evidence which, considering the record as

17   a whole, a reasonable person might accept as adequate to support a conclusion.' " *Thomas v.*

18   *Barnhart,* 278 F.3d 947, 954 (9th Cir. 2002) (quoting *Flaten v. Sec'y of Health & Human*

19   *Servs.,* 44 F.3d 1453, 1457 (9th Cir. 1995)).  Substantial evidence requires " 'more than a

20   scintilla but less than a preponderance' " of the evidence. *Id.* (quoting *Jamerson,* 112 F.3d at

21   1066).

22          In considering the record as a whole, the reviewing court weighs "both the evidence

23   that supports and the evidence that detracts from the ALJ's conclusion." *Mayes v. Massanari,*

24   276 F.3d 453, 459 (9th Cir. 2001) (citing *Sandgathe v. Chater,* 108 F.3d 978, 980 (9th Cir.

25   1997)).  Where evidence is susceptible to more than one rational interpretation, one of which

26   supports the ALJ's decision, the ALJ's decision must be upheld.  *See Morgan v. Comm'r of*

27   *Soc. Sec. Admin.,* 169 F.3d 595, 599 (9th Cir. 1999) (citing *Andrews v. Shalala,* 53 F.3d 1035,

28   1041 (9th Cir. 1995)).  The ALJ is responsible for determining credibility and resolving

1   conflicts in medical testimony, and is likewise responsible for resolving ambiguities. *See*

2   *Magallanes v. Bowen,* 881 F.2d 747, 750 (9th Cir. 1989).

3

4                                           ***Discussion***

5          Plaintiff objects to the R&R, arguing as follows: (1) that Defendant failed to develop

6   the record regarding Plaintiff's mental issues; (2) that Defendant erred in ignoring medical

7   records from a treating source; (3) that Defendant improperly relied on testimony based on

8   incomplete hypotheticals; and (4) that Defendant used a post hoc argument to support the

9   decision. (*See* Pl.'s Objs. at 1.) This Court also will examine Plaintiff's arguments addressed

10  by the Magistrate Judge in the R&R, but not subsequently objected to by Plaintiff, namely that

11  the ALJ erred in not properly evaluating evidence regarding Plaintiff's mental impairments,

12  and erred in finding that Plaintiff did not suffer from a severe medical impairment. (*See* Pl.'s

13  Mem. Supp. Mot. for Revers. at 4-7, 9-13.) Finally, the Court will address Plaintiff's

14  argument, which was not previously addressed by the Magistrate Judge in the R&R, that to

15  deny a destitute plaintiff Social Security benefits would be unjust. (*See* Pl.'s Opp'n at 4.) For

16  the reasons set forth below, the Court **ADOPTS** the R&R in its entirety and **GRANTS**

17  Defendant's Motion for Summary Judgment.

18  ***A.  Development of the Record as to Mental Impairments***

19         Plaintiff contends that the ALJ applied the incorrect legal standard in determining if

20  she had a severe mental impairment.[5] (*See* Pl.'s Mem. Supp. Mot. for Revers. at 7.) Plaintiff

21  argues that in mental impairment cases, the ALJ must make a special effort to obtain adequate

22  records.[6] (*See id.*) This Court **FINDS** that the ALJ was not required to make a special effort

23  in this case.

24         To determine whether a petitioner has a severe mental impairment, the ALJ should

25  _____

26         [5] Plaintiff states, but does not provide support for, this proposition in her Objection. (*See*
     Pl.'s Objs. at 1; *see also* Pl.'s Mem. Supp. Mot. for Revers. at 7.) As a result, the Court looks to
27   Plaintiff's Complaint and her Opposition to Defendant's Motion for Summary Judgment to examine
     this argument. [Doc. Nos. 1, 14.]

28

consult medical evidence, including signs, symptoms, and laboratory findings. *See* 20 C.F.R. § 404.1508 (2006). In the plain language of the statute, a plaintiff's own "statement of symptoms" is not enough to show a mental impairment. *See id.* If medical findings show a possible mental impairment, the ALJ will then (1) identify the need for additional evidence, (2) consider and evaluate the functional consequences of the mental disorder on the plaintiff's ability to work, and (3) organize and present the facts. *See* 20 C.F.R. § 404.1520(a) (2006) (setting out the steps needed to evaluate physical and mental impairments).

In this case, the ALJ did not need to proceed in the evaluation of Plaintiff's mental impairments because Plaintiff did not meet the threshold showing of providing medical evidence suggesting severe mental impairment. Plaintiff attended two years of therapy with Marriage and Family Therapist Trainee Ms. Simone, but as discussed in Part B of this opinion, Ms. Simone does not qualify as a licensed therapist. Furthermore, Ms. Simone submitted no counseling notes or other medical evidence indicating severe mental impairment, only mild impairments.[7] Plaintiff counters that she lacked the financial resources to see a mental health specialist. (*See id.*) However her treating physicians, Dr. Rodarte and Dr. Girbache, saw no need to refer her to a psychiatrist or to County Mental Health. (*See id.* at 171.) Because Plaintiff did not submit medical evidence of a possible mental impairment, there is no need for the ALJ to take special care in developing the record.

Even absent a special standard for the mentally impaired, Plaintiff also contends that the ALJ failed to develop the record because conflicts and ambiguities exist in the testimony. (*See* Pl.'s Opp'n at 6.) Plaintiff mentions that there was a conflict in testimony because the VE stated that a limitation to "simple repetitive work" would preclude Plaintiff from working three particular jobs that VE had previously identified as work Plaintiff could perform. (*See* Pl.'s Mem. Supp. Mot. for Revers. at 17-18.) Plaintiff also cites as an ambiguity, the VE's testimony that Plaintiff can perform certain jobs, and Dr. Galen's finding that Plaintiff would have difficulty responding to work pressure. (*See* Pl.'s Opp'n at 3, 5.) This Court **FINDS** that

---

[7] Although Dr. Galen noted that Plaintiff has mild impairment in her ability to maintain concentration and in her ability to adapt to stressors in a work environment, he did not find that she had any severe mental impairments. (*See id.* at 157-58.)

1  the ALJ fulfilled its obligation in developing the record.

2      As an initial matter, the Magistrate Judge correctly concludes that the ALJ was not

3  obligated to further develop the record. (*See* R&R at 24-25.)  The ALJ does have a "duty to

4  fully and fairly develop the record and to assure that the claimant's interests are considered."

5  *Smolen v. Chater,* 80 F.3d 1273, 1288 (9th Cir. 1996).  This duty exists even when the

6  claimant is represented by counsel.  *See Brown v. Heckler,* 713 F.2d 441, 443 (9th Cir. 1983).

7  The ALJ's duty to develop the record is triggered when there is ambiguous evidence or when

8  the record is inadequate to allow for the proper evaluation of the evidence.  *See Mayes,* 276

9  F.3d at 459-60.  The ALJ may discharge this duty in several ways, including by keeping the

10 record open after the hearing to allow supplementation of the record. *See Tonapetyan v.*

11 *Halter,* 242 F.3d 1144, 1150 (9th Cir. 2001).  Ultimately however, it is the claimant's duty

12 to prove disability by furnishing evidence of impairments.  *See* 20 C.F.R. § 416.912; *see also*

13 *Mayes,* 276 F.3d at 459.

14      Here, the ALJ satisfied his obligation to develop the record by holding the record open

15 after the hearing to allow Plaintiff an opportunity to supplement the record. (*See* Admin. R.

16 at 189-90.)  Plaintiff did not submit additional evidence, even though it was ultimately

17 Plaintiff's responsibility to prove her disability.

18      Contrary to Plaintiff's assertion, taken in context, the VE's statement that a limitation

19 to "simple repetitive work" would preclude Plaintiff from working three jobs, which the VE

20 previously testified that Plaintiff could perform, is not inconsistent.[8] (*See* Pl.'s Mem. Supp.

21 Mot. for Revers. at 17-18; *see* Admin. R. at 186-87.)  The VE's statement that Plaintiff could

22 not work three jobs was only a response to a hypothetical and the restrictions presented by

23 Plaintiff's counsel; it was not a response to the hypothetical and the restrictions presented by

24

25

26

27

28      [8] The three jobs that the VE had previously testified Plaintiff could perform under the ALJ's hypothetical were (1) ink printer, (2) production inspector, and (3) carding machine tender.  (*See* Admin. R. at 186.)

1  the ALJ.[9] (*See* Admin. R. at 186-90.)  Thus, the VE was not inconsistent when she concluded

2  that Plaintiff could work three jobs under the less restrictive hypothetical posed by the ALJ.

3  (*See id.* at 186-87.)

4         Plaintiff's second argument -- that Dr. Galen's findings that Plaintiff would have

5  difficulty responding to work pressure conflicted with the VE's findings that Plaintiff could

6  still hold gainful employment -- also fails.  (*See* Pl.'s Opp'n at 3.)  Although Mr. Galen did

7  state that Plaintiff had mild impairment with regards to her ability to maintain concentration

8  and to adapt to stressors, Dr. Galen also found that Plaintiff's condition was expected to

9  improve in 12 months with active treatment.  (*See* Admin. R. at 157.)  Thus, the limited

10  duration of Plaintiff's condition, not to mention the mild rather than severe nature, prevented

11  her from qualifying as having a mental impairment.  *See* 20 C.F.R. § 404.1509 ("Unless your

12  impairment is expected to result in death, it must have lasted or must be expected to last for

13  a continuous period of at least 12 months" to qualify as an impairment.)  Dr. Galen also found

14  no impairments in Plaintiff's ability to understand complex commands, her ability to associate

15  with co-workers, or in her ability to perform work on a regular basis. (*See id.* at 157-58.)  As

16  a result, Dr. Galen's overall diagnosis did not conflict with the VE's conclusion that Plaintiff

17  could still hold gainful employment.  (*See id.; see also* Admin. R. at 186.)

18  **B.  Exclusion of Medical Records from Alleged Treating Source, Ms. Simone**

19         Plaintiff contends that the ALJ should have considered Marriage and Family Therapist

20  Trainee Ms. Simone's letter as substantial evidence of Plaintiff's mental impairment. (*See*

21  Pl.'s Objs. at 2; *see also* Admin. R. at 132.)  In the alternative, Plaintiff asserts for the first

22  time in her Objections to the R&R that the ALJ should have considered Ms. Simone as a lay

23

24

25

---

26        [9] As discussed further in Part C of this Order, the ALJ's hypothetical was proper because he
included only those limitations that were supported by substantial evidence. *See Kornock v. Harris,*

27  648 F.2d 525, 527 (9th Cir. 1980).  The ALJ did not err in excluding the limitation of Plaintiff only
being able to carry out "simple repetitive work" because the record did not support a finding that

28  Plaintiff was mentally impaired, that she was totally or permenantly disabled, or that she could not do
frequent gripping and fine manipulations with her right hand. (*See* Admin. R. at 15-16.)

1   witness.[10]  (*See id.*)  For the reasons set forth below, the Court **FINDS** that the ALJ properly

2   gave the evidence from Ms. Simone less weight than evidence from the licensed examining

3   psychiatrists.

4          In Social Security cases, the plaintiff has the burden of proving disability.  *See Clem*

5   *v. Sullivan,* 894 F.2d 328, 330 (9th Cir. 1990).  To show mental impairment, a claimant must

6   substantiate allegations with "medical evidence" consisting of clinical signs, symptoms, tests,

7   and/or laboratory findings.  *See* 20 C.F.R. § 404.1508 (2006).  An "acceptable medical

8   source," such as a licensed physician or a licensed or certified psychologist, must provide this

9   evidence.  *See* 20 C.F.R. § 416.913(a).  The treating source's opinions should be "well-

10  supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R.

11  § 416.927(d)(2).

12         Although the plaintiff may offer evidence from other non-medical sources, there is no

13  requirement that the ALJ accept or refute such evidence.  *See Bunnell v. Sullivan,* 912 F.2d

14  1149, 1152 (9th Cir. 1990).  This is because the ALJ is not required to discuss every piece of

15  evidence presented.  *See Vincent v. Heckler,* 739 F.2d 1393, 1394-95 (9th Cir. 1984).  The

16  ALJ also has the discretion to give less weight to opinions from non-acceptable medical

17  sources than to treating or examining physicians.  *See Gomez v. Chater,* 74 F.3d 967, 970-71

18  (9th Cir. 1996).  Further, medical diagnoses from lay witnesses do not constitute competent

19  evidence; however, observations to a claimant's symptoms or ability to perform work may

20  be relevant.  *See Van Nguyen v. Chater,* 100 F.3d 1462, 1467 (9th Cir. 1996).

21         Because Ms. Simone is not a licensed physician, psychiatrist, or psychologist, Ms.

22  Simone does not qualify as an acceptable medical source.[11]  Consequently, the ALJ had the

23  _____

24         [10] As Defendant correctly argue, the Court may refuse to consider arguments that a party
    asserts for the first time after the filing of an R&R by a magistrate judge.  The Ninth Circuit has held
25  that "[a]rguments raised for the first time on appeal have traditionally been held to be barred."
    *Greenhow v. Sec'y of Health & Human Serv.,* 863 F.2d 633, 639 (9th Cir. 1988) (*overruled on other*
26  *grounds*).  The reasoning behind this practice is to prevent litigants from "run[ning] one version of
    their case past the magistrate, then another past the district court." *Id.*
27

28         [11] Plaintiff argues that a trainee therapist working in conjunction with a licensed physician
    is entitled to more weight than if the trainee works alone. (*See* Pl.'s Opp'n at 5.)  However, Plaintiff

1   discretion to accord less weight to her opinion than to opinions from acceptable medical

2   sources.  Additionally, even if the ALJ considered Ms. Simone as a medically acceptable

3   treating source, her four sentence letter provides little in the way of medical evidence, other

4   than a repetition of the symptoms Plaintiff described to Ms. Simone.  (*See* Admin. R. at 132.)

5   Ms. Simone also does not support her findings with counseling notes or other clinical

6   findings.  Further, even though the ALJ held the record open after the hearing to allow the

7   Plaintiff to submit additional evidence, Plaintiff submitted no further information from Ms.

8   Simone.  (*See* Admin. R. at 141, 189-90.)

9        Plaintiff next argues that Ms. Simone's letter should be considered because Ms.

10  Simone is a lay witness.  However, Defendant correctly notes that because Plaintiff never

11  raised this argument in her initial brief to the Magistrate Judge, she effectively waived this

12  argument.  *See Greenhow v. Sec'y of Health and Human Serv.,* 863 F.2d 633, 638-39 (9th Cir.

13  1988) ("allowing parties to litigate fully their case before the magistrate and if, unsuccessful,

14  to change their strategy and present a different theory to the district court would frustrate the

15  purpose of the Magistrates Act.").  Moreover, even if Plaintiff's argument is not waived and

16  Ms. Simone is considered a lay witness, Ms. Simone's letter does not assist Plaintiff's case

17  because Mr. Simone failed to offer observations as to Plaintiff's ability to perform work or

18  to state that she had personal knowledge of symptoms merely reported to Ms. Simone by

19  Plaintiff.  (*See* Admin. R. at 132.)

20  *C.  Alleged Improper Reliance on Incomplete Hypothetical*

21       Plaintiff contends that the ALJ erred in incorrectly relying upon vocational expert

22  testimony based on incomplete hypothetical questions.  (*See* Pl.'s Objs. at 1.)  Specifically,

23  Plaintiff argues that the ALJ failed to present a hypothetical that included Plaintiff's

24  psychiatric limitations.  (*See* Pl.'s Mem. Supp. Mot. for Revers. at 15.)  As a result of this

25  omission, the ALJ improperly supported its findings that Plaintiff could perform the jobs cited

26  by the VE. (*See id.*)  This Court **FINDS** that the ALJ presented a proper hypothetical to the

27  _____

28  does not cite to any evidence in the record that indicates that Ms. Simone worked for a licensed physician.  Moreover, Plaintiff does not cite to any authority to support this statement.

1   VE.

2          The ALJ may rely on a hypothetical to the VE that outlines all the limitations of the

3   claimant that are supported by substantial evidence in the record. *See DeLorme v. Sullivan,*

4   924 F.2d 841, 950 (9th Cir. 1991).  The VE's testimony must be reliable in light of the

5   medical evidence to qualify as substantial evidence.  *See Kornock v. Harris,* 648 F.2d 525,

6   527 (9th Cir. 1980).  If the assumptions in the hypothetical are not supported by the record,

7   the opinion of the VE has no evidentiary value.  *See Gallant v. Heckler,* 753 F.2d 1450, 1456

8   (9th Cir. 1984.)  However, hypothetical questions posed to the VE need not include all alleged

9   limitations, but rather only those limitations that the ALJ finds exist.  *See, e.g., Magallanes*

10  *v. Bowen,* 881 F.2d 747, 756-57 (9th Cir. 1989); *Martinez v. Heckler,* 807 F.2d 771, 773-74

11  (9th Cir. 1986).

12         This Court agrees with the Magistrate Judge's finding that the ALJ did not err in

13  excluding Plaintiff's psychiatric limitations in the ALJ's hypothetical. (*See* R&R at 30.)  The

14  ALJ did not include any psychiatric limitations in his hypothetical because the ALJ did not

15  find substantial evidence in the record to support such a limitation; rather, the ALJ found that

16  Plaintiff's depressive and anxiety disorders resulted in "no or only slight limitations."  (*See*

17  Admin. R. at 16.)  Additionally, the ALJ found that Plaintiff's claims of mental impairments

18  were not supported by medical testimony. (*See id.*)  As a result, the ALJ was not required to

19  include Plaintiff's alleged psychiatric limitations in the hypothetical he presented to the VE.

20  ***D.  Post Hoc Argument***

21         Plaintiff also makes a vague and incoherent argument that Defendant used a "post hoc

22  arguments" to support the ALJ's decision at the hearing. (*See* Pl.'s Objs. at 1.)  Plaintiff's

23  contention fails because she is unclear as to what "post hoc argument" she is referring to and

24  does not cite the specific passage where this post-hoc argument alleged occurred.  Moreover,

25  after reviewing the record, this Court cannot find the passage to which Plaintiff objects.  Thus,

26  this Court **FINDS** that Plaintiff's objection to Defendant's alleged "post-hoc" argument is

27  without merit.

28

1   ***E.  ALJ's Evaluation of Other Evidence Regarding Plaintiff's Mental Impairments***

2        Plaintiff contends that the ALJ erred in not properly assessing and evaluating evidence

3   other than the medical source evidence regarding Plaintiff's mental impairments. (*See* Pl.'s

4   Mem. Supp. Mot. for Revers. at 9.)  In particular, Plaintiff alleges that the ALJ failed to

5   acknowledge Plaintiff's use of anti-depressants; Plaintiff's picking at her skin; and her

6   depressed mood, crying spells, agitation, insomnia, low energy, and low concentration. (*See*

7   *id.* at 9-13.)  Plaintiff also claims that the ALJ neglected to recognize that she has a possible

8   borderline IQ, learning disability or mental retardation. (*See id.* at 11.)  In ignoring this

9   evidence, Plaintiff contends that the ALJ erred in concluding that Plaintiff did not suffer from

10  a "severe" psychiatric impairment. (*See* Pl.'s Mem. Supp. Mot. for Revers. at 4-7.)  This

11  Court **FINDS** that the ALJ properly concluded that Plaintiff suffered from minor to no mental

12  impairment.

13       This Court agrees with the Magistrate Judge, in finding that the ALJ did not err in its

14  evaluation of Plaintiff's psychiatric impairments. (*See* R&R at 27-28.)  This is because the

15  ALJ properly relied on the opinion of Plaintiff's examining psychiatrist, Dr. Galen, who found

16  that Plaintiff did not suffer from severe psychiatric impairments. (*See* Admin. R. at 16.)  Dr.

17  Galen conducted an in-person interview with Plaintiff and examined her medical records

18  before concluding that although she suffers from a depressive disorder and an anxiety

19  disorder, she could still hold gainful employment. (*See id.* at 152-58.)  Moreover, Dr. Galen's

20  report indicates that he was aware of Plaintiff's use of the anti-depressants Elavil and Zoloft

21  and of her poor school performance. (*See id.* at 153-54.)  He also noted that she informed him

22  of her symptoms: depression, weight loss, inability to sleep, crying spells, and her low self-

23  esteem. (*See id.* at 153.)  Thus, Dr. Galen's conclusion incorporates all of the above items that

24  Plaintiff argues were ignored by the ALJ.  Moreover, the ALJ was not required to discuss all

25  evidence presented. *See Vincent,* 739 F.2d at 1394-95 (stating that an ALJ is not required to

26  discuss every piece of evidence before him).

27       This Court also agrees with the Magistrate Judge, that there is little evidence in the

28  record demonstrating that Plaintiff suffers from a learning disorder, borderline IQ, and/or

1    mental retardation. (*See* R&R at 27-28.)  The fact that Plaintiff took special education classes

2    in high school and obtained a low grade point average is not conclusive proof that she suffers

3    from a mental or learning disability.  *See* 20 C.F.R. Pt. 220, App. 1, §12.05 (requiring an IQ

4    of less than 70 to qualify for mental retardation).  Furthermore, no examining or treating

5    physician has ever stated that Plaintiff has a substandard IQ.

6          This Court also adopts the Magistrate Judge's conclusion that even if Plaintiff suffered

7    a mental impairment, the ALJ did not err because he proceeded through the rest of the five-

8    step evaluation process for determining disability. (*See* R&R at 27.)  Having classified her

9    physical impairments as "severe," the ALJ was required to continue through the disability

10   evaluation process.  *See Tacket v. Apfel,* 180 F.3d 1094, 1098-99 (9th Cir. 1999) (citing 20

11   C.F.R. § 404.1520)).  As a result, in assessing Plaintiff's residual functional capacity at

12   subsequent steps, the ALJ considered the limitations imposed by all of Plaintiff's

13   impairments, including those not severe, such as the alleged mental impairments.  *See* Soc.

14   Sec. Ruling 96-8P, 1996 WL 374184, at *5 (S.S.A. July 2, 1996).  Thus, even if the ALJ had

15   erred in his determination that Plaintiff's mental impairments were not severe, such an error

16   would not require reversal or remand, as the ALJ had already proceeded through the five step

17   evaluation process.  Accordingly, the Court **FINDS** that the ALJ did not err in his evaluation

18   of Plaintiff's alleged mental impairment.

19   ***F.  Social Security Policy***

20         Finally, Plaintiff argues that to deny a destitute plaintiff social security benefits would

21   be contrary to the spirit of the Social Security Act. (*See* Pl.'s Opp'n at 4-5.)  Unfortunately,

22   social security benefits cannot support all those who apply for it, and may be denied to even

23   those with great financial difficulties.  One must have a qualifying disability in order to

24   receive it; and the purpose of the ALJ hearing is to determine which persons qualify for these

25   benefits.  In this case, Plaintiff had a hearing before the ALJ; and the ALJ did not err in

26   finding that Plaintiff did not qualify for benefits.

27

28

1

*Conclusion*

2      For the foregoing reasons, the Court **ADOPTS** the R&R's, **GRANTS** Defendant's

3  Cross-Motion for Summary Judgment, and **DENIES** Plaintiff's Motion for Reversal and/or

4  Remand.

5      **IT IS SO ORDERED.**

6

7  DATED:  September 13, 2006

8                                                                    _____
                                                                     HON. NAPOLEON A. JONES, JR.
9                                                                    United States District Judge

10

11  CC:  All parties

12      United States Attorney's Office
       Civil Division
13      880 Front Street, Suite 6293
       San Diego, CA 92101
14
       Magistrate Judge Jan M. Adler
15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 18 -                                    05CV0702-J (JMA)